UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

CONNIE MEDINA,

                Plaintiff,

     v.

CIVIL ACTION NO. 22 CV 1150

The Northwestern Mutual Life Insurance Company,
Northwestern Mutual Investment Management
Company, LLC,
Northwestern Mutual Wealth Management Company,
Northwestern Mutual Investment Services, LLC,
Mason Street Advisors, LLC and
GRO, LLC,

                Defendants.

## NORTHWESTERN MUTUAL'S
## ANSWER AND AFFIRMATIVE DEFENSES

The Northwestern Mutual Life Insurance Company ("Northwestern Mutual");

Northwestern Mutual Investment Management Company, LLC; Northwestern Mutual Wealth

Management Company; Northwestern Mutual Investment Services, LLC; Mason Street

Advisors, LLC; and GRO, LLC (collectively, the "Northwestern Mutual Parties"), through their

undersigned counsel, submit their Answer and Affirmative Defenses to the Complaint filed by

Connie Medina ("Medina").

### RESPONSE TO SECTION TITLED "NATURE OF THE ACTION"

It is admitted that Medina seeks relief under the Employment Retirement Income

Security Act of 1974 ("ERISA") based on a claim for benefits under the Northwestern Mutual

Employee Disability Income Plan, but it is denied that Medina was unlawfully denied any

benefits, and it is denied that Medina is entitled to any relief.

1

## RESPONSE TO ALLEGATIONS OF JURISDICTION AND VENUE

1.      Jurisdiction of this Court is proper pursuant to 28 USC § 1131. This action is authorized and instituted pursuant to the ERISA (29 U.S.C. § 1132).

ANSWER: The Northwestern Mutual Parties admit that jurisdiction exists pursuant to 28 USC § 1131 and that Medina has authorized and instituted this action based on her claim for relief under ERISA (29 USC § 1132).

2.      Venue is proper in this Court pursuant to 28 USC § 1391(b) and (c). The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Wisconsin, and the employment records relevant to such practices are maintained and administered within the Eastern District of Wisconsin.

ANSWER: The Northwestern Mutual Parties admit that venue is proper in the Eastern District of Wisconsin.

## PARTIES

3.      The Plaintiff, Connie Medina ("Medina") is an adult resident of the State of Wisconsin with a residence located at 5919 West Forest View Ct., Unit E, Franklin, Wisconsin 53132.

ANSWER: Admitted, based on the information supplied to Northwestern Mutual by Medina.

4.      The Defendant, The Northwestern Mutual Life Insurance Company, is a domestic corporation having a principal place of business located at 720 East Wisconsin Ave., Suite S650, Milwaukee, Wisconsin 53202.

2

ANSWER: The Northwestern Mutual Parties admit that The Northwestern Mutual Life Insurance Company is a domestic corporation having a principal place of business located at 720 East Wisconsin Avenue, Milwaukee, Wisconsin 53202.

5. The Defendant, Northwestern Mutual Investment Management Company, LLC, is a foreign limited liability company with its principal place of business located at 720 East Wisconsin Ave., Suite S650, Milwaukee, Wisconsin 53202.

ANSWER: The Northwestern Mutual Parties admit that Northwestern Mutual Investment Management Company, LLC, is a foreign limited liability company with its principal place of business located at 720 East Wisconsin Avenue, Milwaukee, Wisconsin, 53202.

6. The Defendant, Northwestern Mutual Wealth Management Company, is a domestic corporation having a principal place of business located at 720 East Wisconsin Ave., Suite S650, Milwaukee, Wisconsin 53202.

ANSWER: The Northwestern Mutual Parties admit that Northwestern Mutual Wealth Management Company is a domestic corporation having a principal place of business located at 720 East Wisconsin Avenue, Milwaukee, Wisconsin, 53202.

7. The Defendant, Northwestern Mutual Investment Services, LLC, is a domestic limited liability company with a principal place of business located at 720 East Wisconsin Ave., Suite S650, Milwaukee, Wisconsin 53202.

ANSWER: The Northwestern Mutual Parties admit that Northwestern Mutual Investment Services, LLC, is a domestic limited liability company with a principal place of business located at 720 East Wisconsin Avenue, Milwaukee, Wisconsin, 53202.

8.      The Defendant, Mason Street Advisors, LLC, is a foreign limited liability company with its principal place of business located at 720 East Wisconsin Ave., Suite S650, Milwaukee, Wisconsin 53202.

ANSWER: The Northwestern Mutual Parties admit that Mason Street Advisors, LLC, is a foreign limited liability company with its principal place of business located at 720 East Wisconsin Avenue, Milwaukee, Wisconsin, 53202.

9.      The Defendant, GRO, LLC, on information and belief, is a domestic limited liability company with its principal place of business located at 720 East Wisconsin Ave., Suite S650, Milwaukee, Wisconsin 53202.

ANSWER: The Northwestern Mutual Parties admit that GRO, LLC, is a Delaware limited liability company with its principal place of business located at 720 East Wisconsin Avenue, Milwaukee, Wisconsin, 53202.

**STATEMENT OF FACTS**

10.      Medina is, and at all times relevant to this cause of action was, an employee of Northwestern Mutual Life Insurance Company ("NMLIC").

ANSWER: The Northwestern Mutual Parties admit that Medina was employed by Northwestern Mutual from October 15, 2018 to October 31, 2022, deny that she was providing employee services throughout this entire time period, and deny the allegations of this paragraph to the extent inconsistent with the preceding admissions and denials.

11.      At all times relevant to this cause of action, Defendants provided disability benefits under the Northwestern Mutual Employee Disability Income Plan (the "Plan").

ANSWER: The Northwestern Mutual Parties admit that Northwestern Mutual, and not the other Northwestern Mutual Parties, provided disability coverage to Medina under the Plan throughout the course of her employment at Northwestern Mutual.

4

12.     On or about October 13, 2020, Medina underwent a surgery to remove a ganglion cyst from her right wrist.

ANSWER: Based on the records and information supplied by Medina, admitted.

13.     Shortly after the surgery, Medina experienced significant discoloration, weakness, and pain in her right wrist.

ANSWER: The Northwestern Mutual Parties lack knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore those allegations are denied.

14.     Medina was diagnosed with Complex Regional Pain Syndrome ("CRPS") Type 1 in her right wrist and hand.

ANSWER: Based on the records and information supplied by Medina, admitted.

15.     CRPS is a rare neurological disorder that develops spontaneously following an injury or surgery. The disorder causes excruciating pain in and/or around the area where the initial injury or surgery occurred. The pain cannot be controlled by normal means. The area in and around the injury or surgery also can present swelling, temperature changes, color changes, and/or motor dysfunction.

ANSWER: The Northwestern Mutual Parties lack knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore those allegations are denied.

16.     CRPS is permanent and has no cure.

ANSWER: The Northwestern Mutual Parties lack knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore those allegations are denied.

17.     Medina has been unable to use her right wrist and hand because of the extreme weakness and severe pain caused by the CRPS.

ANSWER: Denied.

18.     In addition to the severe pain and weakness, Medina's right hand is extremely sensitive to cool temperatures. Medina's right hand and wrist have the feeling of being "fire" when exposed to cool temperatures. Medina requires assistance performing normal daily activities such as grocery shopping because she cannot touch cool surfaces such as a milk carton from a cooler. Medina's ultra-sensitivity to cool temperatures requires her to be hyper-vigilant in buildings, homes, vehicles, etc. using any type of air conditioning system. Medina's daily routine requires several hours of hand/wrist treatments.

ANSWER: The Northwestern Mutual Parties lack knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore those allegations are denied.

19.     Medina sought assistance form [sic] local health care providers for her CRPS; however, local health care providers were not equipped to render treatment on this rare neurological condition.

ANSWER: Based on the records and information supplied by Medina, the Northwestern Mutual Parties admit that Medina sought treatment from local health care providers, and lack knowledge or information sufficient to form a belief as to the truth of the balance of the allegations of this paragraph, and therefore those additional allegations are denied.

20.     Medina consulted with the Mayo Clinic ("Mayo") regarding her CRPS because Mayo had specialists on staff who were familiar with treating CRPS. Mayo also had a unique spinal cord stimulator implant that had been successful in at least lessening pain associated with CRPS.

ANSWER: Based on the records and information supplied by Medina, the Northwestern Mutual Parties admit that Medina consulted with the Mayo Clinic regarding her CRPS, and lack

6

knowledge or information sufficient to form a belief as to the truth of the balance of the allegations of this paragraph, and therefore those additional allegations are denied.

21.     Medina underwent a trial of the spinal cord stimulator implant from approximately November 17, 2021 through November 23, 2021.

ANSWER: Based on the records and information supplied by Medina, admitted.

22.     Defendants provided Medina with disability coverage under the Plan for the November 17-23, 2021 time period.

ANSWER: The Northwestern Mutual Parties admit that Northwestern Mutual, and not the other Northwestern Mutual Parties, paid disability benefits to Medina under the Plan during the time period alleged, based on information supplied by Medina in support of her claim.

23.     Medina had a spinal cord stimulator permanently implanted on her spine in her upper back in December, 2021.

ANSWER: Based on the records and information supplied by Medina, admitted.

24.     Defendants provided Medina with disability coverage under the Plan from December 27, 2021 through February 6, 2022 for the implant surgery and recovery period.

ANSWER: The Northwestern Mutual Parties admit that Northwestern Mutual, and not the other Northwestern Mutual Parties, paid disability benefits to Medina under the Plan during the time period alleged, based on information supplied by Medina in support of her claim.

25.     Although the spinal cord stimulator reduced some of the pain, Medina continues to experience substantial pain in her wrist and hand. Medina's wrist and had also [sic] continue to be extremely sensitive to cool temperatures.

ANSWER: The Northwestern Mutual Parties lack knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore those allegations are denied.

26.    Medina has experienced issues with the spinal cord stimulator because the stimulator was placed in an area of Medina's spine where there is a bulging disc.

ANSWER: The Northwestern Mutual Parties lack knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore those allegations are denied.

27.    Medina is unable to sit for extended periods of time because of the issues she has been experiencing with the spinal cord stimulator.

ANSWER: The Northwestern Mutual Parties lack knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore those allegations are denied.

28.    Medina has been consulting with Mayo to determine her options relative to the issues she has been experiencing with the spinal cord stimulator. Medina may require another surgery to correct the issues.

ANSWER: The Northwestern Mutual Parties lack knowledge or information sufficient to form a belief as to the truth of these allegations, and therefore those allegations are denied.

29.    Medina has applied for long-term disability benefits under the Plan.

ANSWER: Admitted.

30.    Defendants have denied Medina's application for long-term disability benefits under the Plan with its most recent denial being issued on August 15, 2022.

ANSWER: The Northwestern Mutual Parties admit that Northwestern Mutual has denied some, but not all, of Medina's claims for benefits under the Plan, and denies the balance of the allegations of this paragraph to the extent inconsistent with these limited admissions and the denials in this paragraph.

31.    Defendants denied Medina's application for long-term disability benefits because they contend that Medina does not satisfy the definition of "Disability" under the Plan.

ANSWER: The Northwestern Mutual Parties admit that Northwestern Mutual has denied some, but not all, of Medina's claims for benefits under the Plan, admit that one of the reasons Northwestern Mutual denied Medina's most recent claim for long-term disability benefits was because she did not meet the definition of "Disability" under the Plan, and deny the balance of the allegations of this paragraph to the extent inconsistent with these limited admissions and the denials in this paragraph.

32.     The Plan defines "Disability" as "incapacity of an Employee resulting from accidental bodily injuries or a mental or physical illness, to engage in any Occupation."

ANSWER: The Northwestern Mutual Parties admit that this language appears in the Plan, but denies that this language, quoted in isolation from the balance of the terms of the Plan, completely and accurately reflects the terms and conditions of the Plan.

33.     The Plan defines "Occupation" as "any occupation for which the Employee is reasonably fitted by education, training or experience, with due regard to the Employee's vocation and Compensation prior to his or her disability."

ANSWER: The Northwestern Mutual Parties admit that this language appears in the Plan, but deny that this language, quoted in isolation from the balance of the terms of the Plan, completely and accurately reflects the terms and conditions of the Plan.

**RESPONSE TO SECTION TITLED "STATEMENT OF LEGAL CLAIM"**

**COUNT I- ALLEGED VIOLATION OF SECTION 502(a)(l)(B) OF EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974**

34.     Medina incorporates paragraphs 1 - 33 as if fully set forth herein.

ANSWER: All prior paragraphs of this Answer are incorporated by reference in response to this paragraph of the Complaint.

9

35.     Medina possesses a "Disability" under the Plan as she is unable to work in any occupation for which she is qualified.

ANSWER: Denied.

36.     Defendants are obligated to provide Medina with disability benefits under the Plan.

ANSWER: Denied.

37.     Defendants have failed and refused to provide Medina with disability benefits under the Plan.

ANSWER: The Northwestern Mutual Parties admit that Northwestern Mutual has denied some, but not all, of Medina's claims for benefits under the Plan.

38.     Defendants are liable to Medina for all benefits under the Plan.

ANSWER: Denied.

39.     Defendants are liable to Medina for all attorney's fees and costs related to this action.

ANSWER: Denied.

## AFFIRMATIVE DEFENSES

1.     Medina's Complaint fails to state a claim upon which relief can be granted.

2.     The Plan Fiduciary and Administrator and its designees have discretionary authority to, among other things, determine whether benefits are properly payable under the Plan as a matter of contract and fact, and, accordingly, are entitled to deference under the abuse of discretion standard.

3.     The adjudication of this claim is limited to the facts and evidence contained in the administrative record.

4.      Medina is limited to the arguments that she raised during the administrative process, and may not introduce new arguments that she did not raise during the administrative process.

5.      The denial of benefits to Medina was not arbitrary and capricious, and to the contrary, was fully consistent with the facts and the contract.

6.      Based on the terms, exclusions, conditions, and limitations of the Plan, the Northwestern Mutual Parties are not liable to Medina under the Plan or otherwise.

7.      In the alternative, if there were any benefits due under the plan (and such is not the case), any benefits payable are subject to applicable offset, integration, deductions, and/or adjustments in accordance with the Plan.

8.      Medina's claims are barred, in whole or in part, by her failure to pursue with necessary diligence alternative positions within Northwestern Mutual, and by her failure to continue her employment in positions outside Northwestern Mutual for which Medina was and is reasonably fitted by her education, training and experience.

9.      Medina's claims are barred, in whole or in part, because, for at least a portion of the time material to her claims, Medina secured employment for which she was and is reasonably fitted by her education, training and experience, contrary to her claimed disability.

10.     Medina's claims are barred by the doctrines of estoppel and waiver.

11.     Medina's claims against the defendants other than Northwestern Mutual are barred because those defendants have no responsibility or potential liability under the Plan.

12.     The Northwestern Mutual Parties reserve their right to amend and supplement their Answer and Affirmative Defenses if further proceedings in this action so warrant.

## **RELIEF REQUESTED**

WHEREFORE, the Northwestern Mutual Parties request that the Court:

A.      Enter judgment in their favor on all claims, dismissing those claims with prejudice.

B.      Enter judgment awarding the Northwestern Mutual Parties recovery of their attorney fees, costs, and disbursements as provided by law; and

C.      Grant such other or further relief that the Court deems appropriate and just, consistent with the terms of the Plan.

Dated this 20th day of January, 2023.

                                            GODFREY & KAHN, S.C.


                                            By: s/ *Paul F. Heaton*
                                            Paul F. Heaton
                                            State Bar No. 1000858
                                            Godfrey & Kahn, S.C.
                                            833 East Michigan Street, Suite 1800
                                            Milwaukee, WI 53202-5615
                                            Phone:  414-273-3500
                                            Fax:  414-273-5198
                                            Email:  pheaton@gklaw.com


                                            Mark Thomson
                                            State Bar No. 1120598
                                            Godfrey & Kahn, S.C.
                                            One East Main Street
                                            Madison, WI 53703
                                            Phone:  608-257-3911
                                            Fax:  608-257-0609
                                            Email:  mthomson@gklaw.com

                                            Attorneys for Defendants

28515241.4

12